*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILLBUR, Minors.

UNPUBLISHED
June 11, 2019

No. 346275
Kent Circuit Court
Family Division
LC Nos. 18-051876-NA;
18-051877-NA;
18-051878-NA;

Before: K. F. KELLY, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor children RW, LW, and MW pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse), (3)(j) (reasonable likelihood that child will be harmed if returned to the parent), and (3)(k)(*ii*) (parent abused the child or a sibling of the child and the abuse included criminal sexual conduct involving penetration). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

Respondent and mother were married, and LW and MW were born during the marriage. RW is mother's daughter from a previous relationship. Respondent legally adopted RW. After an incident at school in which RW was acting out sexually with another student, RW disclosed to mother that she had been sexually abused by respondent. As a result of the allegations, mother asked respondent to leave the family home and she called Child Protective Services (CPS).

In a forensic interview, RW disclosed several acts of abuse by respondent involving digital, penile, and vibrator penetration. RW indicated that the abuse started when she was about four years old. The Department of Health and Human Services (DHHS) filed a petition seeking the termination of respondent's parental rights to all three children on the basis of RW's disclosures of sexual abuse. However, the petition was withdrawn by the prosecutor's office because the trial court issued an order granting sole physical and legal custody of the children to mother. Respondent was not allowed to have contact with the children. Criminal charges pending against respondent as a result of the sexual abuse allegations were also dismissed. RW's mother initiated divorce proceedings at some point after RW disclosed the sexual abuse. During

those proceedings, respondent filed for custody and parenting time with the children and DHHS refiled a petition requesting the termination of respondent's parental rights to all three children. After holding a contested adjudication and dispositional hearing, the trial court granted DHHS's request and terminated respondent's parental rights. This appeal followed.

## II. ANALYSIS

## A. JURISDICTION

First, respondent argues that the trial court erred in finding that the allegations in the petition were proven by a preponderance of the evidence. We disagree.

"To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). Jurisdiction must be demonstrated according to a preponderance of the evidence standard. *Id*. This Court reviews "the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact[.]" *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

> Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional. The adjudicative phase determines whether the probate court may exercise jurisdiction over the child. If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child. . . . To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of [MCL 712A.2(b)]. [*In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993).]

In this case, the trial court found that the children met the statutory requirements in MCL 712A.2(b)(1) and (2). In pertinent part, MCL 712A.2(b)(1) and (2) allow the trial court to exercise jurisdiction over minor children:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, [or] who is subject to a substantial risk of harm to his or her mental well-being . . . .

> * * *

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in . . . .

In this case, the trial court accepted jurisdiction of the children on the basis of the sexual abuse allegations involving RW. The trial court found that the sexual abuse allegations had been proven by a preponderance of the evidence considering RW's statements to her mother, the

forensic interviewer, and the sexual assault nurse. During the adjudication phase of the hearing, RW's mother testified that RW disclosed that respondent had pulled down his pants in front of her. After respondent left the family home, RW disclosed additional instances of sexual assault. The forensic interviewer testified that RW disclosed that respondent placed his fingers and penis in her vagina. RW also recounted to the forensic interviewer that respondent used a vibrator on her. RW was able to draw respondent's penis and the vibrator. Finally, the sexual assault nurse testified that RW disclosed that respondent touched her vagina with his hands, put his penis in her vagina, and used a vibrator on her. Considering this testimony establishing that RW made several specific and consistent statements concerning sexual abuse perpetrated by respondent, the trial court did not clearly err in finding that the sexual abuse allegations in the petition were proved by a preponderance of the evidence. See *In re BZ*, 264 Mich App at 295.

Moreover, we reject respondent's contention that because the forensic interviewer did not follow protocol in conducting the forensic interview with RW the trial court clearly erred in concluding that the allegations against respondent in the petition were established by a preponderance of the evidence. At adjudication, respondent argued that the forensic interviewer failed to properly follow the forensic interview protocol because she was not visible on the video recording during the entire interview. Respondent also asserted that DHHS and the forensic interviewer failed to investigate alternative hypotheses concerning RW's behavior, and that the normal physical exam showed that no physical abuse ever occurred. In response to these arguments, the trial court found that the forensic interviewer properly followed the forensic interview protocol and that any allegation that the forensic interviewer's face was not visually on the screen at all times was insufficient to show that the protocol was not properly followed. Moreover, the trial court found challenges on the basis of the alternative hypothesis and the lack of physical findings without merit.

The trial court's findings were not clearly erroneous. See *id*. First, the forensic interviewer testified that she followed the forensic interview protocol in conducting her interview with RW. The forensic interviewer also testified that contrary to defendant's assertions, she was visible on the video. The trial court, following its review of the video, concluded that the protocol was properly followed. Second, the forensic interviewer testified that RW disclosed that a male peer at school asked RW to touch his penis. The forensic interviewer stated that she asked RW about other possible perpetrators, but RW denied that she was sexually abused by anyone else. Finally, the sexual assault nurse explained that RW's normal physical exam was expected considering the amount of time that had passed since the abuse. As discussed earlier in this opinion, given RW's consistent allegations to multiple different people concerning the nature of the sexual abuse, respondent has not shown that the trial court clearly erred in finding that the allegations were proven by a preponderance of the evidence on the basis of alleged deficiencies in the forensic interview, other sexual encounters with peers that did not involve penetration, and a normal physical exam. See *id*.

Finally, as petitioner points out in its brief on appeal, according to the doctrine of anticipatory neglect, "how a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (citation and quotation marks omitted). Therefore, "[a] child may come within the jurisdiction of the court solely on the basis of a parent's treatment of another child." *In re Gazella*, 264 Mich App 668, 680; 692 NW2d 708 (2005), superseded in part on other grounds by MCL 712A.19b(5) as stated

in *In re Hansen*, 285 Mich App 158, 163; 774 NW2d 698 (2009), vacated on other grounds 486 Mich 1037 (2010). "Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child . . . ." *In re Gazella*, 264 Mich App at 680. As a result, the trial court's acceptance of jurisdiction of LW and MW on the basis of the sexual abuse allegations concerning RW did not amount to clear error. See *id*.

## B. REUNIFICATION EFFORTS

Next, respondent contends that the trial court clearly erred by not requiring DHHS to provide him with reunification services. We disagree.

Whether reasonable efforts for reunification were made is reviewed for clear error. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005) (recognizing that the trial court in that case did not clearly err in concluding that reasonable efforts were made to achieve the reunification of the family). The trial court concluded that DHHS was not required to provide services aimed at reunification to respondent and we agree with the trial court's determination.

As this Court observed in *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009):

[DHHS], however, is not required to provide reunification services when termination of parental rights is the agency's goal. *In re Terry*, 240 Mich App 14, 25 n 4, 610 NW2d 563 (2000); see also MCR 3.977(D). MCL 722.638(1)(a)(*ii*) mandates that petitioner seek termination of parental rights when the parents are suspected of perpetuating sexual abuse upon the minor children or their siblings.

Pursuant to MCR 3.977(E):

The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if

(1) the original, or amended, petition contains a request for termination;

(2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

(3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

(b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (*l*), (m), or (n);

(4) termination of parental rights is in the child's best interests.

In this case, the petition filed by DHHS requested termination of respondent's parental rights at the outset on the basis of respondent's alleged sexual abuse of RW. In addition, during the adjudicative portion of the lower court proceedings, the trial court found that the allegations in the petition, namely that respondent had repeatedly sexually abused RW, had been proven by a preponderance of the evidence and accepted jurisdiction of the children. During the dispositional phase of the proceedings, the trial court subsequently concluded that the sexual abuse allegations were true in accordance with the clear and convincing evidence standard, which supported statutory grounds for termination, and that termination was in the children's best interests. As a result, the trial court complied with the dictates of MCR 3.977(E), and DHHS was not required to provide reunification services. See *In re HRC*, 286 Mich App at 463. Moreover, respondent's citation to MCL 712A.19a(2)(a) is not supportive of his position that he ought to have been provided with services aimed at reunifying the family. This statute provides, in pertinent part that:

> Reasonable efforts to reunify the child and family must be made in all cases except if any of the following apply:
>
> (a) *There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.* [MCL 712A.19a(2) (emphasis added).]

In this case, the trial court rendered such a judicial determination during the adjudicative portion of this case when it concluded that the allegations of repeated sexual abuse reported by RW were established to be accurate by a preponderance of the evidence. Finally, respondent's argument that the allegations in the petition against him did not fall within the confines of MCL 722.638 is unpersuasive. MCL 722.638 provides, in pertinent part:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:
>
> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:
>
> * * *
>
> (*ii*) *Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.* [Emphasis added.]

While respondent correctly observes that the criminal charges pending against him had been dismissed when DHHS filed the petition that led to the termination of his parental rights, the record evidence during both the adjudicative and dispositional phases of these proceedings

amply confirmed that respondent repeatedly penetrated his young daughter with his penis, fingers and a vibrator. Under such circumstances, we disagree with respondent that the plain language of MCL 722.638(1)(a)(*ii*) does not apply to the facts of this case.[1]

Finally, respondent's attempt to analogize the facts of this case to *In re Blakeman, Minors*, 326 Mich App 318; 926 NW2d 326 (2018) is unsuccessful. Specifically, respondent claims that because DHHS staff would not provide him with services unless he admitted to the sexual abuse of RW, his Fifth Amendment right against self-incrimination was violated. Respondent's argument is unpersuasive.

Although the criminal charges against respondent had been dropped, CPS worker Augestena Baar testified that DHHS substantiated sexual abuse allegations against respondent on the basis of the disclosures RW made in her forensic interview. Further, although Baar initially testified that respondent would have to admit to the allegations and take responsibility for the sexual abuse to participate in services, she also stated that even if respondent maintained that the sexual abuse did not occur, he would have to participate in counseling to address the fact that RW made repeated egregious allegations against him. Baar went on to note that she could still refer respondent to counseling. Accordingly, simply as a factual matter, the record does not support respondent's claim that he was required to admit to the sexual abuse of his daughter to receive services aimed at reunification.

Additionally, *In re Blakeman* is not supportive of respondent's position. In *In re Blakeman*, the respondent was alleged to have physically abused a toddler that his wife was babysitting. *Id*. at 321. DHHS filed a child protective petition against the respondent, but did not seek termination of his parental rights. *Id*. at 322. Following adjudication, the trial court ordered the respondent out of the family home and to have no contact with his own four children. *Id*. The respondent then began a court-ordered service plan with the goal being that he would be able to move back into his family home. *Id*. at 322-323. Throughout the proceedings in the lower court, the trial court expressed (1) concern that the respondent had not acknowledged his wrongdoing and (2) resistance to allowing the respondent back into the family home until he had done so. *Id*. at 325. The precise issue this Court was asked to decide was "whether a parent's constitutional right against compelled self-incrimination bars a court in child protection proceedings from requiring that parent, as a condition of reunification, to admit to having abused an unrelated child." *Id*. at 331. In that case, this Court ultimately determined that the trial court's action of requiring that the respondent "confess to an act of criminal child abuse" before allowing reunification with his own children deprived the respondent of his Fifth Amendment right against self-incrimination. *Id*.

In our view, *In re Blakeman* is both factually and legally distinguishable from the present appeal. Importantly, as discussed earlier in this opinion, DHHS was not required to offer

---

[1] Statutes are interpreted with the goal of discerning the Legislature's intent by reference to the plain language of the legislation. *Olsen v Jude and Reed, LLC*, 325 Mich App 170, 181-182; 924 NW2d 889 (2018).

respondent services aimed at reunification given that it sought termination of respondent's parental rights at the outset on the filing of the petition. *In re HRC*, 286 Mich App at 463. Moreover, our review of Baar's testimony reflects that rather than evidencing an intention on the part of DHHS to deprive respondent of reunification with his family until he acknowledged that he sexually abused RW, she was commenting on the essential inefficacy of services that could assist respondent with his personal issues leading to the sexual abuse against his daughter if he continued to deny his role in the sexual abuse. Thus, the present case simply is not one where respondent was forced to make a choice "to choose between his liberty interests or his children." *In re Blakeman, Minors*, 326 Mich App at 335. Moreover, respondent was not presented with a scenario where he was being made to admit to the criminal sexual abuse of his daughter to "regain care and custody of his children[,]" or being compelled to make an "inculpatory admission against respondent's penal interests." *Id*. at 339. In any event, the evidence presented during the dispositional phase of the lower court proceedings confirmed that respondent would not have participated in reunification services even if offered to him. For example, Jodi Roth, another CPS worker assigned to this case, testified that the CPS worker assigned to the case in Battle Creek, Michigan attempted to contact respondent by telephone and attempted to complete a home visit but was unable to establish contact with him. Baar further indicated that respondent did not reach out to her expressing an interest in obtaining services. As a result, respondent's suggestion that he was denied his Fifth Amendment right against self-incrimination is without merit.

## C. STATUTORY GROUNDS

Respondent also asserts that the trial court erred in finding that statutory grounds supported the termination of his parental rights. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews "the trial court's findings of fact under the clearly erroneous standard." *In re HRC*, 286 Mich App at 459; see also MCR 3.977(K).

In this case, respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*), which provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

* * *

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

In this case, the record supports the trial court's conclusion that there were statutory grounds to support the termination of respondent's parental rights. RW made several consistent statements describing sexual abuse that involved digital, penile, and vibrator penetration. RW's disclosures indicated that the abuse started when she was four years old. Further, RW's therapist testified that RW suffered from post-traumatic stress disorder (PTSD) as a result of the sexual abuse and that contact with respondent would be detrimental to her treatment in therapy. As noted by the trial court, respondent denied the allegations and did not seek understanding concerning the trauma to RW. Instead, respondent attempted to disrupt the safety plan and gain custody and parenting time with the children pursuant to the parties' divorce case.

Considering the egregious sexual abuse allegations involving RW, the trial court did not clearly err in finding that all three children were at risk of harm if placed in respondent's care. See *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011) (stating that it is "appropriate for a trial court to evaluate a respondent's potential risk to the other siblings by analyzing how the respondent treated another one of his or her children"). As a result, statutory grounds existed pursuant to MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*) because respondent sexually abused RW, and there was a reasonable likelihood that he would continue to sexually abuse RW or victimize LW and MW as they became older, if they were placed in respondent's care. See *In re VanDalen*, 293 Mich App at 139.

D. BEST INTERESTS

Finally, respondent argues that the trial court clearly erred in determining that termination of his parental rights was in the best interests of the children. We disagree.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews the trial court's decision regarding the child's best interests for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Id*. When the trial court

considers a child's best interests, the focus must be on the child and not the parent. *In re Schadler*, 315 Mich App 401, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home[.]" *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). A trial court can also consider the length of time the child "was in foster care or placed with relatives," and whether it was likely that "the child could be returned to [the parent's] home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

Considering the evidence presented at the dispositional hearing, the trial court's finding that termination was in the children's best interests was not clearly erroneous. As discussed earlier in this opinion, RW disclosed consistent allegations of sexual abuse where respondent penetrated her, which began when she was four years old. RW suffered from PTSD as a result of the abuse, and her therapist opined that contact with respondent would be detrimental to RW's progress in therapy. The CPS worker believed that termination would give RW the opportunity to begin the process of grieving and allow her to heal and develop in a healthy manner. Further, while respondent maintained that the sexual abuse allegations were false, he did not even address the fact that RW made several consistent statements regarding sexual abuse against him and instead, he sought custody and parenting time with the children in the divorce proceedings. As a result, it was reasonable for the trial court to conclude that all three children were at risk for abuse if they were placed with respondent. The caseworker believed that respondent could work through the events in counseling, but it would require months of services and it was not in the children's best interests to wait for respondent to do so. Accordingly, the trial court did not err in finding that termination of respondent's parental rights was in the children's best interests. See *In re Hudson*, 294 Mich App at 269 (concluding that termination was in the children's best interests in a case in which the respondent-mother sexually abused her son as "a necessary step in allowing the children to have the safety, permanence, and stability to which they [were] entitled").

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ James Robert Redford